IN RE JOHN INERARITY, ADMINISTRATOR OF JOHN FORBES, DE-CEASED, v. CURTIS AND GRISWOLD, TRUSTEES, &c.

The late Territorial Government was the creature of the Government of the United States—to continue in existence during the pleasure of Congress, or until the admission of the Territory into the Union as a State.

The powers exercised by the Federal functionaries, after the admission of Florida into the Union, were exercised by State authority, under the State Consti-tution, and by virtue of the express provisions of the schedule and ordinance, in order that no inconvenience might arise from a change of government. For this purpose, and pro hac vice, the Federal officers were continued, and acted as State officers.

The records of the Territorial Courts are records of the General Government, and the assent of Congress is necessary for their transfer to any other Court. Upon the admission of a State into the Union, the concurrence of both the State and Federal Government is requisite to the transfer of records, in ca-ses of appropriate State jurisdiction.

The Congress of the United States, by the act of February 22d, 1847, authori-zed the transfer of certain classes of records and pending causes to the Dis-trict Court of the United States, thus claiming and exercising the power of ownership over such records. The exercise of this power by Con-gress was a rightful exercise of power; and so far as Congress has not claimed these records as belonging to the General Government, it may be regarded as a sanction of the action of State authority over the subject.

The records and papers of the Territorial Courts did not pass to any Court or Courts, until the government, whose records they were, provided, either expressly or by implication, for the transfer, and the judicial action of some other tribunals; and, consequently, the mere fact that the Courts of the State became possessed of such records, did not warrant jurisdiction; nor was the mode by which they are said to have become so possessed, rightful and proper.

The Supreme Court of Florida is not the successor of the Court of Appeals of the Territory, and cannot award process to execute the decrees of that Court.

The act of the General Assembly of July 25th, 1845, section 13, does not place the records therein mentioned in the custody of the Supreme Court, nor does it authorize any judicial action upon them. The Clerk of the Supreme Court is merely made the keeper of the records, &c. of the Court of Appeals; but as such, he is not amenable to this Court, and might refuse to obey its mandate in relation thereto.

The nature and object of the petition filed in this case, the grounds of the application, and of the argument of counsel for defendants in opposition to the motion, are fully stated in the opinion of the Court.

Judge BAKER sat in the place of ANDERSON, Chief Justice, who had been of counsel in the case.

*Davis,* for the Petitioner.

*Archer,* for the Defendant.

THOMPSON, *Justice,* delivered the opinion of the Court.

This is a petition for the transfer and delivery to the District Court of the United States for the Northern District of Florida, of the record of the proceedings of the Court of Appeals of the late Territorial Government of Florida, in a cause wherein Curtis and Griswold, trustees of the Apalachicola Land Company were appellants, and John Inerarity, administrator of John Forbes, and James Inerarity were respondents, removed by appeal from the Superior Court of the Western District, for Escambia County, to the

said Court of Appeals. The application is made by John Inerarity, who was the plaintiff in the original suit in the Superior Court.

The decree of the Court of Appeals was pronounced at the January Term, 1844, and both parties appealed therefrom to the Supreme Court of the United States. While the cause was pending in that Court, on the 3d of March, 1845, Florida was admitted into the Union, as a State, by an act of Congress of that date. The appeal in the Supreme Court of the United States was decided at January Term, 1848, and the decree of the Court of Appeals was by that decision affirmed. The petition sets forth that the mandate of the Supreme Court of the United States has issued to the District Court for the Northern District of Florida, according to the provisions of the 3d section of the act of Congress of February 22d, 1847, (Acts 2d Session 29th Congress, Chapter 17,) commanding the said District Court to proceed to the execution of the decree of the Court of Appeals ; but that the said Court cannot execute the said mandate for want of the record of the judgment and proceedings in said cause, which it is alleged are in the archives of this Court; and praying that an order may pass directing the delivery of the same to the Clerk of the District Court, &c.

This application is resisted by Messrs. Delafield and Curtis, Trustees of the Apalachicola Land Company, who are represented herein by counsel, on several grounds : 1. That the General Assembly of Florida have vested power in this Court to take the papers and keep them. 2. That the subject matter of the suit is not cognizable by the Federal Courts, under the acts of Congress ; and 3. That this Court has jurisdiction over the subject-matter of the suit, and ought itself to do whatever is necessary to execute the judgment of the Court of Appeals, if the same appear to be affirmed, and grant process, &c.

In the consideration of this subject it will be important to

23

ascertain the character of the Courts of the late Territorial government, and to what power the records of the said Courts appertained on the dissolution of the government; and also, whether this Court has now any judicial or other power over them, *de facto* or *de jure,* so as to authorize an order directing their delivery to the District Court, as prayed for by the petitioners, in case we find the District Court is entitled to the records in question.

The Territorial government of Florida was the creature of the government of the United States, under the authority of the second clause of the third section of the fourth article of the Constitution, which vests in Congress the power to " make all needful rules and regulations respecting the ter-" ritory and other property belonging to the United States." By the act of March 30th, 1822, amended by the acts of March 3d, 1823, of May 26th, 1824, of May 15th, 1826, of May 23d, 1828, and of July 7th, 1838, and by other acts, (see Thompson's Digest, Appendix, 585 to 612,) all the territory ceded by Spain to the United States, known by the name of East and West Florida, was erected into a Territory of the United States, under the name of the Territory of Florida, and the power and authority of that government ascertained and distributed into and among three departments, executive, legislative and judicial. The judicial power was vested in a court of appeals, in five superior courts and, also, in such inferior courts and justices of the peace as the legislative department should from time to time establish. The superior courts were courts of general original jurisdiction at common law and in equity, and had also jurisdiction of matters peculiarly cognizable by the courts of the Federal judiciary; and the Court of Appeals was a court of appellate jurisdiction over the judgments, sentences and decrees of the superior courts; the judgments and decrees of which latter court were subject to review by appeal or writ of error in the Supreme Court of the United States, under certain rules, regulations and restrictions.

Inerarity, Adm'r, vs. Curtis and Griswold, Trustees.—Opinion of Court.

This Territorial government was to continue only during the pleasure of Congress, and until the admission of the Territory into the Union of the States.  Upon the happening of the latter event, by virtue of the act of Congress of March 3d, 1845, the Territorial government was displaced and abrogated fully and entirely, and no power or jurisdiction existed within the Territorial limits of Florida except that derived from State authority.  It is true that the Governor, judges and other officers, continued to exercise authority and jurisdiction after the 3d of March, 1845, and until the full and complete organization of the State government ; but the power and jurisdiction so exercised were by State authority and under the Constitution.  The Schedule and Ordinance, forming the 17th article, in order that no inconvenience might arise from the organization and establishment of the new government, declared by section 1st, That all laws and parts of laws then in force, or which might thereafter be passed by the Governor and Legislative Council of the Territory of Florida, not repugnant to the provisions of the Constitution, should continue in force until, by operation of their provisions or limitations, the same should cease to be of force, or until the General Assembly of the State should alter or repeal the same ; and by section 4, That all officers, civil and military, then holding their offices and appointments in the Territory under the authority of the United States or under the authority of the Territory, should continue to hold and exercise their respective offices and appointments, until superseded under the Constitution ; and that all actions at law or suits in chancery, or any proceeding pending, or which might be pending in any court of the Territory of Florida, might be commenced in or transferred to such court of the State as may have jurisdiction of the subject matter thereof.  By force of these provisions the State Government was put into immediate operation, and the interregnum that must have otherwise

intervened, thus avoided. The officers civil and military were *pro hac vice* State officers, and the government a State authority and jurisdiction. It was not a continuation of the former Territorial government, but the adoption and adaptation of the machinery of the old, to the purposes of the new government.

That the effect of the admission of the Territory into the Union, as a State, was to deprive the several departments of that government of all their power, authority and jurisdiction is clear and incontrovertible. The right of sovereignty in the General government which gave life and vigor to them was gone. The officers and the courts of the old system were continued, but they held by a new tenure; they could point no longer to the government of the United States as the source of their power, but to the Constitution of the State of Florida. It was a government *ad interim*, to prevent anarchy and confusion during the period of time necessary to be consumed in arranging the new government, electing officers, &c., &c. The recent decision of the Supreme Court of the United States in Benner v. Porter fully supports this view of the subject. 9 Howard's Reports, 235. On the subject of the records of the courts of the Territory, the Supreme Court, in the same case, commenting on the previous case of Palao v. Hunt, 4 Howard's Reports, 589, says that there is no ground for qualifying the opinion expressed in that case, believing it to be sound and incontrovertible; but deem it proper, in the reiteration of that opinion, to do so with more fullness, as to its effect in respect to cases of State jurisdiction. The Court says: "The " Territorial courts were the courts of the General govern- " ment, and the records in the custody of their clerks, the " records of that government; and it would seem to follow " necessarily from these premises, that no one could legally " take the possession or custody of the same without the " assent, express or implied, of Congress. Such assent is

" essential, upon the plainest principles, to an authorized
" change of custody.   On the admission of a Territorial
" government into the Union, as a State, the concurrence of
" both the Federal and State authorities would seem to be
" required in the transfer of the records, in cases of appro-
" priate State jurisdiction, from the old to the new govern-
" ment.   An act of Congress would be incapable of passing
" them under the State jurisdiction, as would be an act of
" the legislature of the State to take the records out of the
" custody of the Federal government.   Both should concur."

The paragraphs quoted from this decision are in entire
consonance with our own views and opinions, and fully ex-
pressive thereof.   We think it is entitled to great weight,
as well from the ability and learning of the judges, as from
the character of the forum in which they preside, the deter-
mination of such political questions being within its pecu-
liar province ; and, besides, the opinion is expressed upon
the examination and review of the former opinion of the
Court, in Palao v. Hunt, before alluded to, and may, there-
fore, be considered as a judgment pronounced upon the full-
est deliberation.

The decision of the case of Palao v. Hunt produced the
action of Congress by the act of February 22d, 1847, before
adverted to, which placed the records and proceedings of
certain classes of cases under the control and jurisdiction
of the District Court of the United States, established and
organized within the State of Florida, under the 1st section
of the 3d article of the Constitution of the United States.
The causes and matters of record of the old Territorial
Courts thus transferred to the District Courts may be stated
as follows :

1. Causes pending in the Superior Courts of the Territory,
under the acts of Congress of May 23d, 1828, and May
26th, 1830, providing for the settlement and confirmation of
private land claims in Florida ;

2. Causes which were pending in the Court of Appeals on the 3d of March, 1845 ;

3. The records and proceedings of the several Courts in causes determined before the said period, and from which writs of error could have been sued out, or appeals could have been taken and prosecuted to the Supreme Court of the United States, according to the laws in force prior thereto ;

4. The records and proceedings of the several Courts, in causes determined therein prior to said March 3d, 1845, on which writs of error had been sued out, or appeals taken, under the laws then in force, to the Supreme Court of the United States ;

5. All causes pending in any of the Superior Courts, or Courts of Appeals, on the 3d of March, 1845, not legally transferred to the Courts of the State, and which the said Courts continued to hold cognizance of and proceeded to determine after that day, or which are claimed to have been since pending therein as Courts of the United States ; and

6. All cases of Federal character and jurisdiction commenced in said Territorial Courts after said day, and in which judgments or decrees were rendered, or which are claimed to have been since pending therein.

The record of the decree and proceedings of the case of Curtis and Griswold, trustees, &c. appellants, and Inerarit-ty, respondent, falls within the class fourthly above described, the decree of the Court of Appeals in said cause having been appealed from prior to the admission of Florida into the Union, and, of course, pending in the Supreme Court of the United States at that time.

The Supreme Court, in Benner v. Porter, explaining the opinion expressed, that the assent of Congress was essential to the authorized transfer of the records of the Territorial Courts, in suits pending at the time of the change of government, to the custody of State tribunals, says, that " it is

Inerarity, Adm'r, *vs.* Curtis and Griswold, Trustees.—Opinion of Court.

"proper to add to avoid misconstruction, that we do not "mean thereby to imply or express any opinion on the "question, whether or not without such assent, the State "judicatures would acquire jurisdiction. That is altogether "a different question; and, besides, the acts of Congress "that have been passed in various instances on the admis-"sion of a State, providing for the transfer of Federal "causes to the District Court, as in the case of the admis-"sion of Florida already referred to, and saying nothing at "the time in respect to those belonging to State authority, "may very well imply an assent to the transfer of them "by the State to the appropriate tribunal. Even the omis-"sion on the part of Congress to interfere at all in the mat-"ter, may be subject to a like implication, and a subsequent "assent would, doubtless, operate upon past acts of trans-"fer by the State authority." There is, we think, much force in this view of the question, as to causes pending of which the Courts of the United States have not exclusive jurisdiction, or cannot, under the constitution and laws of the United States, take jurisdiction at all; and where, as in the case of Florida, the act of February 22d, 1847, provides for the transfer of the records and proceedings of certain classes of cases, saying nothing about other classes of which the State Courts could take jurisdiction, the inference is irresistible that Congress intended that the State authorities should assume jurisdiction over the latter, or if they had already assumed it, the omission may well be considered as a tacit acquiescence in, and a ratification of, the authority thus claimed and exercised; and in view of the difficulties and confusion which would otherwise arise, in case of a hasty or improvident assumption of authority over the subject by the new State, we should be so inclined to consider the question. Concurring as we do in the opinion expressed by the Supreme Court of the United States in the cases referred to, we feel no hesitation in declaring that the Courts

of the Territory of Florida were Courts of the United States, and the records of said Courts the records of that government—that the State authorities had no just right to assume the exercise of any authority or jurisdiction over them, except so far as the government of the United States, by express authority or just implication, shall accord the power to do so. So far as Congress, by the act of February 22d, 1847, claimed to exercise jurisdiction over certain classes of records and pending causes, it is in our opinion the exercise of a rightful power, and the Courts to which the jurisdiction and authority over them is granted are entitled to the custody ; and so far as Congress has not claimed these records, it may be considered as the sanction of the General Government to the exercise of jurisdiction by the State authorities over the subject.

We are not unaware that the cases of Stewart v. Preston, (1st Florida Reports, 1, 9,) and Beatty v. Ross, (1st Florida Reports, 198, 210,) decided in this Court, hold a contrary doctrine to that which we have announced; but the question was a new one, and there were no reported adjudications to aid the Court in arriving at a proper conclusion, and if, under these circumstances, this Court has proceeded upon an erroneous view of the subject, the better course is to retrace our steps as the error becomes apparent. The case of Stewart v. Preston was decided in 1846, at the first term of the Court, and before Congress had taken any action on the subject. The act of the General Assembly of Florida of July 25th, 1845, provided that all cases pending in said Court of Appeals should be transferred to this Court, and should be tried and determined therein and thereby, excepting from the operation of the enactment cases cognizable by the Federal Courts; and the Clerk of the Supreme Court having obtained possession of the records and files of the Court, the cause was docketed for hearing in this Court. The counsel for res-

pondent made a motion to strike the cause from the docket, on the ground amongst others that this Court had not jurisdiction, the case being brought before it neither by writ of error, nor appeal, nor consent of parties, and because it had not been transferred by any competent authority. The Court expressed no opinion upon the questions raised in the very able argument of the counsel for respondent, but placed their judgment upon the authority of the General Assembly to transfer the case, and upon the inconvenience which must inevitably result from a different view. The Court did not perceive any sufficient cause for questioning the power of the Legislature to pass the law, and considering that the cause was to be disposed of by some tribunal, and as no law had been passed by Congress providing for the transfer of such a cause, by appeal or writ of error, from the Superior Court to a District or Circuit Court of the United States, or to the Supreme Court, it was ruled that the case must be tried by this Court, or not be tried at all.

Entertaining the opinions which we have expressed, we are compelled to disapprove of the conclusion, as well as the argument of the Court in this case; and we feel well assured that if Congress had at the time asserted the claim subsequently made by the act of February 22d, 1847, the opinion of the Court would have been otherwise. The concluding clause of the 4th section of the 17th article of the Constitution, as well as the 14th section of the act of Assembly of July 25th, 1845, must be considered ineffectual to give jurisdiction of those pending suits to the State Courts, until they received the concurrent sanction of the Congress of the United States, as before mentioned.

The case of Beatty v. Ross had been commenced by the service of process from the Superior Court of the Middle District prior to the 3d March, 1845; before the return day of the process, the Territory was admitted into the Union of the States, and the Territorial Government was thereby abrogated and displaced. The process was actually re-

24

turned to the Superior Court after that time, and when, by force and operation of the Constitution, it was a State Court. The plaintiff filed his declaration, and the defendant entered his appearance by counsel, which, according to the practice, was so far equivalent to the plea of the general issue, as to prevent a judgment by default at that time. Thus the Superior Court, as a State Court, became rightfully possessed of jurisdiction of the cause—the subject matter was clearly within its jurisdiction, and the defendant, by his appearance by counsel, had acknowledged it as to his person. At the trial term, and after the cause had been transferred to the Circuit Court of the State, the defendant, after a default noted for want of a plea, at the intervening rule day, filed his petition to remove the case to the District Court of the United States, on the ground that he was an alien. The Court refused the prayer of the petition, and final judgment by default was given against him, and on appeal to this Court, the judgment of the Circuit Court was affirmed. We have made this allusion to the circumstances of the case, because we believe the judgment of the Court was correct, although we cannot concur with the learned judges who then sat here, in the course of reasoning which led them to the conclusion. The recital of the facts shows that the case was rightfully in the Superior Court, as a State Court, and it was fully competent for the General Assembly to transfer it to the Circuit Court, on the organization of the latter tribunal. Being in the Superior Court, as a State Court, this application of the defendant to remove it to the District Court of the United States, should have been made at the time of entering his appearance, (section 12th, act of Congress, September 24th, 1789,) and was too late when made at the trial term of the cause in the Circuit Court, (Gibson v. Johnson, Peters' Circuit Court Reports, 44.) The Court, in Beatty v. Ross, is undoubtedly correct in the position, that the District Court, established by Congress within the State upon its admis-

Inerarity, Adm'r, *vs.* Curtis and Griswold, Trustees.—Opinion of Court.

sion, was not entitled of right to the records and papers of the Superior Courts of the Territory, and to try suits commenced and pending therein; that it is not the successor of the Territorial Courts, and that the Courts of the United States, established by Congress under the Constitution, take only by grant, and can exercise jurisdiction in those cases only where it is conferred upon them. But these principles do not, in our opinion, conduce to prove that the State Courts are successors of the Territorial Courts; for if they are such successors, then they must continue under the authority which created their predecessors—when the very reverse is the case, the State Courts claiming the authority of the Constitution and laws of the State, and having and possessing the power and jurisdiction thereby conferred. We do not consider that the State Courts follow and come in the *place* of the Territorial Courts, although the former may sit in the same counties, and dispense justice as the latter Courts did, by the same rules of practice, and to the same people. They may be, in one sense of the term, successors, but certainly are not in that sense which would imply power, authority and jurisdiction over the records and pending suits. The records and papers of the Territorial Courts did not pass to any court or courts, until the government, whose records they were, provided, either expressly or by implication, for the transfer to and judicial action of some other tribunals. With this view, we cannot sanction as rightful and proper the mode by which the courts of the State are said to have become possessed of the said records and pending suits, nor can we approve of the conclusion deduced from such acquisition. The Court says, "that the judges of the Superior Courts, and other officers of the Territorial Courts, having been adopted and continued by the Constitution until the organization of the State Courts," " took possession of the records and papers after our admis-" sion, and exercised jurisdiction over suits pending and in-" stituted in those courts." " They administered the local

" laws of the State, deciding suits between citizen and citi-
" zen, and trying indictments for assaults and offences of a
" like character.   The *State* judges succeeded them in the
" different counties, and thus became possessed of the rec-
" ords and suits ; being so possessed, it was, in the opinion
" of the Court, not only competent for them to adjudicate
" the cases presented for trial, but it was their bounden du-
" ty to do so."   This, we, think, cannot be sustained on any
just principle, and would be very mischievious in practice.
If a court should take jurisdiction of a cause instituted in
another court, merely because it has acquired the actual
possession of the record of the suit, no matter how acquired,
and without authority of law, it would lead to perpetual
conflicts of authority, as unseemly as they would be destruc-
tive of good order ; and the mischiefs would be increased,
where the respective courts were created by different gov-
ernments.

The learned Court, for the purpose of showing that they
were not mistaken on this point, make a reference to Smith v.
McIvor, (9th Wheaton's Reports, 532,) and the principle de-
cided therein that, in all cases of concurrent jurisdiction, the
Court which first has possession of the subject-matter must
decide it conclusively, is invoked for the purpose of sus-
taining the argument ; but it is very clear to our minds,
that the force and effect of the principle decided is misap-
prehended and misapplied. The jurisdiction alluded to is one
which is rightfully obtained by authority of law, not a mere
possession of the records of another court, and of the files
or issue books of causes depending therein obtained by force,
artifice, or accident.   An examination of the case cited will
show that the principle decided was there applied to a case
where a suit in equity was brought for the purpose of liti-
gating the same question that had been previously adjudi-
cated between the same parties in a court of law, without
the addition of any equitable circumstances to give juris-
diction, and of which question courts of law and equity had

Incrarity, Adm'r, *vs.* Curtis and Griswold, Trustees.—Opinion of Court.

concurrent jurisdiction—it was held· that the decision at law was conclusive upon the rights of the parties, and that if a court of equity entertained such a suit, it would act as an appellate court to affirm or reverse a judgment already rendered by a competent tribunal. Besides, in the application of this principle, the court assumed the jurisdiction of the State courts, which was the very question at issue, and which was to be proved.

But it seems to us the great error in the argument of the learned court is the assumption that the courts established by Congress in the Territory of Florida were not courts of the United States. The Court says, " We attribute no im- " portance to the fact that Congress established the superior " courts. This did not make them United States courts." What, then, did it make them ? It would seem that every court must be the court of the power which creates it ; and it is admitted they were created by Congress, in which body the legislative department of the General government is de- posited. But this error seems to have arisen from a misap- prehension of the decision of the Supreme Court U. S. in the American Insurance Company v. Canter, (1 Peters' R., 546,) and which is cited to sustain the position. We understand the Supreme Court in that case to have decided that the courts established by Congress in the Territory of Florida were " not *constitutional* courts, in which the judicial power conferred by the Constitution on the General government can be deposited;" but declared them to be *legislative* courts created under the power which Congress possesses over the Territories of the United States. Neither in this, nor in any other case, has the Supreme Court declared that they were not courts of the United States ; but, on the contrary, in the recent cases before cited, they are expressly asserted and claimed to be courts of the United States, and their re- cords the property of the United States.

Whether the District Court of the United States to which Congress has assigned the power and jurisdiction over the

record in question, can rightfully take judicial cognizance of the subject matter of the suit, is a question with which we have no concern. If it be well founded it must be urged in that Court. We decide only that the records in question may be rightfully disposed of by the General government, and that this Court is not the successor of the Court of Appeals, and is not authorized to exercise judicial power over the cause, or to award process to execute the decree of that Court.

It remains to be inquired whether the record in question is in the archives of this Court, or we have such power over it as will enable us to grant the prayer of the petition. No power or authority is claimed in the Constitution of the State over the records of the courts of the Territory in causes which had been determined in the Court of Appeals prior to the admission of the State, but by the act of the General Assembly of July 25th, 1845, section 13, it is provided " that the clerk of the Court of Appeals of the Territory of Florida shall, on the demand of the clerk of the " Supreme Court of this State, forthwith deliver to him all " the dockets, records, writs, files, books and papers of said " Court of Appeals, and property and furniture of every " nature and kind whatsoever, and the seal thereof, to be " kept by said clerk of the Supreme Court in a room to be " assigned him by the Governor in the Capitol, for his office." There can be no doubt as to the proper interpretation of this act. It does not place the records in the custody of this Court, neither does it authorize any judicial action upon them, nor give this Court any power over them. It is no doubt competent for the General Assembly to require of the clerk of the Supreme Court the performance of duties in addition to the duties-proper of his office and wholly foreign thereto, and such we understand to be the scope and effect of the 13th section before referred to. But it does not follow, as a legitimate deduction therefrom, that this Court would thereby acquire power and jurisdiction over him in relation to those additional duties.

As keeper of the records and papers of the Court of Appeals, the clerk is not amenable to this Court in the same manner and to the same extent that he is as the keeper of our records.   We cannot exercise a summary jurisdiction over him in relation thereto, nor order him to deliver up, nor make any other disposition of the matters so given him in charge by the State ; and he might well refuse obedience to our mandate in respect to them, unless it should be in some proceeding instituted in and decided by the Circuit Court as a court of original jurisdiction, and brought before and decided by this Court, in the exercise of its legitimate appellate authority.   This is also the view taken of the statute by the Supreme Court of the United States, in Palao v. Hunt, (4 Howard's Reports, 589) ; indeed, it is not susceptible of any other.

The only records and papers of the Court of Appeals over which we have any control, are those of the suits pending and undetermined therein at the time of the change of government, and which were, by the section 14 of the act of Assembly of July, 1845, transferred to this Court, and of which the Court assumed jurisdiction and decided.

We have not the authority to give the petitioner the relief which he asks and to which he seems to be entitled, but are compelled to deny his prayer and refer him to the remedy pointed out by the section 2d of the act of Congress of February 22d, 1847, or to some other appropriate remedy, if there be any, in the Circuit Court, as a Court of original jurisdiction.

Motion denied with costs.