Eberle v. King, *Judge.*

No. 8.    Opinion Filed January 10, 1908.

(93 Pac. 748.)

1.  MANDAMUS—Subjects of Relief—Official Duty.  To entitle re-
lator to a peremptory writ of mandamus, he must show that the
act, to compel the performance of which the writ is invoked, is
one which the law specially enjoins on respondent as a duty
resulting from an office, trust, or station.

2.  SAME—Officers—Prima  Facie  Title—Recognition.  Mandamus
will not lie at the instance of relator holding prima facie title
to the office of register of deeds to compel the judge of the
district court to enter an order recognizing him as such.

3.  STATES—New  States—Admission  of  Territory—Transfer  of
Records—Concurrent Legislation Requisite.  Prior to the admis-
sion of this state into the Union the records of the clerk or.
deputy clerk of the United States court in the Indian Territory,
as ex officio recorder, at Muskogee, were the property of the
United States.  As such, it required the concurrent action of
both the federal and state governments to pass them under the
jurisdiction of the latter when organized.  Irrespective of the
intent of the enabling act, or the act of Congress amendatory
thereto, approved March 4, 1907, Act March 1, 1907, c. 2285, 34
Stat. 1026, was sufficient on the part of the federal government,
and article 4, sec. 1274, Wilson's Rev. & Ann. Stat. Okla. 1903,
extended and put in force throughout the state, eo instante, on
the admission of the 'state into the Union, together with sections
8 and 9 of the schedule of the Constitution, were sufficient con-
current action on the part of the state govenment to pass said
records under its jurisdiction when organized, and vest their
legal custody and right of possession in relator as register of
deeds, upon relator qualifying and giving bond as required by
law.

4.  SAME.  For the reason just stated, respondent could not, by
receiving unauthorized possession of said records from the clerk
or deputy clerk of the United States court in the Indian Territory
as ex officio recorder, after the state was admitted into the
Union and consequent abolition of that court, and when said
office of clerk or deputy clerk as ex officio recorder had become
functus officio, thereby pass said records under his jurisdiction
as judge of the district court, and hence the custody and control
over said records, alleged and admitted to be exercised by re-

Vol. 20—4

spondent, was such as was done in his individual capacity and not in his official capacity as a court.

5.    MANDAMUS—Records of Office—Custody as Individual. Mandamus will not lie at the instance of relator holding prima facie title to the office of register of deeds, and who has qualified and given bond as such, as required by law, to compel the judge of the district court to turn over to him the books, papers, and records belonging to the office of register of deeds, the unauthorized custody of which respondent holds, not as a court, but as an individual, and refuses to surrender on demand.

(Syllabus by the Court.)

Original application for mandamus by Charles H. Eberle against John H. King, judge of the district court of Muskogee county, to compel him to recognize relator as register of deeds and to deliver to him the records of that office. Application denied.

In the case of *Toney Matney v. John H. King, Judge, etc.*, recently decided by this court, and reported in this volume, it was, by counsel on both sides, "agreed that the response of John H. King in case of Charles H. Eberle be, and the same is admitted to be true in fact; that the facts alleged in that answer are true; and that the case of Charles H. Eberle be submitted on this statement of facts—complaint and answer as whole record —the answer to be treated as return to alternative writ." The petition for the writ in this case is by relator, "Charles H. Eberle, and represents and shows to this court that at the general election held in the state of Oklahoma on the 17th day of September, 1907, he was duly elected to the office of register of deeds of the county of Muskogee, state of Oklahoma, having received a majority of the votes of said county cast at said election for said office, and that he has since received his certificate of election from the clerk of said county and has taken the oath of office and given the bond as required by law; * * * that after having qualified as required by law, as above stated, to wit, on the 18th day of November, 1907, your petitioner entered upon the discharge of the duties of his office as such register of deeds, and has remained

in the active discharge of the duties of said office up to this time; that the records belonging to his office as register of deeds of said county are in the control and custody of John H. King, judge of the Third judicial district of the state of Oklahoma, which district is composed of the counties of Muskogee and Wagoner in said state; that on 'the 21st day of November, 1907, your petitioner presented to the said John H. King, sitting as a court at Muskogee in said county, his petition in writing stating that he was duly elected register of deeds of said county; that he had qualified as such, and requested said court to turn over to him, as such register of deeds, the records and papers which properly belong to him as register of deeds of said county; and further states that said court refused to recognize your petitioner as said register of deeds, and refused to turn over to him any of the papers or records which belong to him as such register of deeds of said county; * * * that he is remediless in the premises, by or through ordinary process or proceedings at law, and he therefore prays this honorable court to award against the said district court a writ of mandamus commanding and requiring it to recognize your petitioner as register of deeds of said county, and to vacate all orders heretofore made inconsistent therewith, and turn over to your petitioner all papers and records which legally belong to him," etc.

In his answer "the respondent, John H. King, judge of the district court for the Third judicial district of the state of Oklahoma, * * * says: That he neither admits nor denies that the plaintiff, Charles H. Eberle, was duly and legally elected to the office of register of deeds of Muskogee county, in the state of Oklahoma, at the election held in the state of Oklahoma and in the county of Muskogee on September 17, 1907; but respondent states that L. E. Smith, not a party to this proceeding, does deny the election of Charles H. Eberle, and claims with equal earnestness that he (L. E. Smith) was duly and legally elected register of deeds in and for Muskogee county at said election

held on September 17, 1907; * * * that Charles H. Eberle was the Democratic candidate at said election for the office of register of deeds of Muskogee county, and that L. E. Smith was the Republican candidate for register of deeds at said election for Muskogee county, and that each claims to have received the larger number of votes, and each claims to hold title to said office by a certificate of election, signed by the county clerk in and for Muskogee county; * * * that he has taken no action in regard to said register of deeds in and for Muskogee county, and has recognized neither L. E. Smith nor plaintiff, Charles H. Eberle, as register of deeds; * * * that the facts set up in his answer to the petition filed by Toney Matney against him in this court are equally applicable to this case; * * * that both these matters grew out of the same election, and same court proceedings, and he now asks that this cause be consolidated and heard with the case of Tony Matney against himself (reported in this volume and 93 Pac. 737), in so far as his response in that case is applicable in this case; * * * that he has no records in his possession which the plaintiff is entitled to possession of, whether he be the legally elected register of deeds or not; * * * that there is no law in the state of Oklahoma, either in the enabling act or in the Constitution, requiring the district court, as successor of the United States Court in the Indian Territory, to turn over to the register of deeds for any county the books, papers, and records received by the court from the clerk of the United States court, or deputy clerk of the United States court, as *ex officio* recorder, for the respective district of the Indian Territory."

*J. E. Wyand, Thomas H. Owen*, and *Baker & Pursel*, for relator.

*George S. Ramsay*, for respondent.

TURNER, J. (after stating the facts as above). By this it will be seen that the same statement of facts in the case of *Matney v. King*, reported in this volume, 93 Pac. 737, so far as ap-

plicable, governs in this.  In that case the relator successfully invoked the aid of the writ to be recognized by the respondent, as clerk of the district court of Muskogee county, and by virtue of a certificate of election dated October 30, 1907, signed by Porter Spaulding, county clerk of Muskogee county, showed *prima facie* title to the office as against Carrol S. Bucher, who claimed title thereto by virtue of a certificate of election dated November 8, 1907, signed by Frank R. Applegate.  In this case the relator invokes the aid of the writ to be recognized by the respondent, as register of deeds of Muskogee county, and, like the relator in that case, by virtue of a certificate of election dated October 30, 1907, signed by Porter Spaulding, county clerk of Muskogee county, shows *prima facie* title to the office as against L. E. Smith, who claims title thereto by virtue of a certificate of election dated November 8, 1907, signed by Frank R. Applegate, alleged county clerk of Muskogee county, which latter certificate is merely colorable, if not void.  Having thus shown *prima facie* title to the office of register of deeds of Muskogee county, without attempting to inform this court as to just what records are intended, relator simply states "that the records belonging to his office as register of deeds of said county are in the control and custody of John H. King, judge of the Third judicial district, etc;  *  *  *  that said court refused to recognize your petitioner as said register of deeds," and refused to turn them over to him, as such, and prays that the writ of mandamus issue requiring him to do so.

We might be at a loss to know just what records are intended but for that part of the answer of the respondent wherein he states "that he has no records in his possession which the plaintiff is entitled to the possesssion of, whether he be the legally elected register of deeds or not;  *  *  *  that there is no law in the state of Oklahoma, either in the enabling act or the Constitution, requiring the district court, as successor of the United States Court in Indian Territory, to turn over to the register of deeds for any county the books, papers, and records received by

the court from the clerk of the United States court, or the deputy clerk of the United States court, as *ex officio* recorder, for the respective recording district in Indian Territory." By this the issue herein appears to be that the respondent is alleged and admitted to be in possession of certain "books, papers, and records received by" him, as a "court, from the clerk of the United States court, or deputy clerk of the United States court, at Muskogee, as *ex officio* recorder," to which relator, as register of deeds of that county, claims the right of possession, and which respondent has refused to turn over to him on demand.

Now let us determine the legal status of these records and see who, under the law, is entitled to their possession, and if it be relator we will then determine whether the writ should run requiring respondent to turn them over to him. In order to do this let us review briefly the legislation out of which these records grew. On March 1, 1889, the Congress of the United States passed an act, entitled "An act to establish a United States Court in the Indian Territory, and for other purposes" (Act March 1, 1889, c. 333, 25 Stat. 783), and therein, among other things, provided for a judge, marshal, clerk, etc., and prescribed its jurisdiction, both civil and criminal, and "that two terms of said court shall be held at Muskogee in said territory." On May 2, 1890, Congress passed another act, entitled "An act to provide a temporary government for the territory of Oklahoma, to enlarge the jurisdiction of the United States Court in Indian Territory, and for other purposes" (Act May 2, 1890, c. 182, 26 Stat. 81), which, among other things, for the purpose of holding terms of court, divided Indian Territory into three divisions, known as the First, Second, and Third divisions; provided that Muskogee should be the place of holding court in the First division, and that the judges of said court should hold at least two terms of said court each year in each division; provided for deputy clerks in each division, and "that the general laws of the state of Arkansas in force at the close of the session of the General Assembly

of that state of 1883, as published in 1884 in the volume known as Mansfield's Digest of the Statutes of Arkansas, * * * are hereby extended and put in force in the Indian Territory, * * *" naming them by chapter, including chapter 110 on "Mortgages"; and in section 38 provided that "clerks and deputy clerks shall be also *ex officio* recorders within their respective divisons, and as such they shall perform such duties as are required of recorders of deeds under the laws of Arkansas. * * *"    On March 1, 1895, Congress passed another act, entitled "An act to provide for the appointment of additional judges for the United States Court in Indian Territory and for other purposes" (Act March 1, 1895, c. 145, 28 Stat. 693), which, among other things, divided Indian Territory into three judicial districts, known as the Northern, Central, and Southern; provided for the holding of at least two terms of the United States Court each year in each place of holding court in each district, of which there were four in the Northern, four in the Central, and five in the Southern; designated 'Muskogee as one of the places of holding said court in the Northern district; and provided for the appointment of two additional judges, and "that the clerk of the United States Court in the Indian Territory now in office shall be the clerk of the Southern district, and the clerk of the Central and Northern districts shall be appointed by the respective judge thereof * * * and keep his office at one of the places of holding court in his district.    He shall perform the same duties * * * as clerk of the district courts of the United States. * * *"    And "each of said clerks shall appoint a deputy clerk for each court in his district where he himself does not reside."

Other and further legislation by Congress affecting the United States Courts in Indian Territory from the passage of this act up to February 19, 1903, included, among other things, the appointment of additional judges and the carving out of an additional district, known as the Western district (Act May 19, 1902), wherein Muskogee was retained as a place of holding court,

and perhaps additional places designated, the recital of none of which is material to this inquiry. On February 19, 1903, Congress passed another act, entitled "An act providing for record of deeds and other conveyances and instruments of writing in Indian Territory" (Act Feb. 19, 1903, c. 707, 32 Stat. 841), the material part of which (omitting the enacting clause) is as follows:

"That chapter twenty-seven of the Digest of the Statutes of Arkansas, known as Mansfield's Digest of eighteen hundred and eighty-four, is hereby extended to the Indian Territory, so far as the same may be applicable and not inconsistent with any law of Congress: Provided, that the clerk or deputy clerk of the United States court of each of the courts of said territory shall be *ex officio* recorder for his district and perform the duties required of recorders in the chapter aforesaid, and use the seal of such court in cases requiring a seal, and keep the records of such office at the office of said clerk or deputy clerk.

"It shall be the duty of each clerk or deputy clerk of such court to record in the books provided for his office all deeds, mortgages, deeds of trust, bonds, leases, covenants, defeasances, bills of sale, and other instruments of writing of or concerning lands, tenements, goods or chattels; and where such instruments are for a period of time limited on the face of the instrument they shall be filed and indexed if desired by the holder thereof and such filing for the period of twelve months from the filing thereof shall have the same affect in law as if recorded at length. The fees for filing, indexing, and cross-indexing such instruments shall be twenty-five cents, and for recording shall be as set forth in section thirty-two hundred and forty-three of Mansfield's Digest of eighteen hundred and eighty-four. * * *

"Such instruments heretofore recorded with the clerk of any United States court in Indian Territory shall not be required to be again recorded under this provision, but shall be transferred to the indexes without further cost, and such records heretofore made shall be of full force and effect the same as if made under this statute. * * *

"All instruments of writing the filing of which is provided for by law shall be recorded or filed in the office of the clerk or deputy clerk at the place of holding court in the recording district where said property may be located, and which said recording districts are bounded as follows: [Designating twenty-five

recording districts and naming Muskogee as the place of record for District No. 10.]"

Thus it will be seen that the records in controversy were, at the time of the passage of the so-called enabling act (Act June 16, 1906, c. 3335, 34 Stat. 267), in the custody and under the control of the clerk or deputy celrk as *ex officio* recorder of the United States Court in the Indian Territory at Muskogee, and were the property of the United States, subject to be disposed of, on admission of that territory into the Union and the consequent abolition of that court, by that or some other act of Congress, as Congress should see fit. As is usual in such cases Congress might see fit to turn them over to the state government, when formed; but, in order to make this transfer effectual, it seems that concurrent action on the part of the state is necessary to pass them under state jurisdiction. *Benner et al. v. Porter*, 9 How. (U. S.) 235, 13 L. Ed. 119, we think, correctly states the rule. In that case the court said:

"The territorial courts were the courts of the general government, and the records in possession of their clerks the records of that government; and it would seem to follow necessarily from these premises that no one could legally take the possession or custody of the same without the assent, express or implied, of Congress. Such assent is essential, upon the plainest principles, to authorize change of custody. On the admission of a territorial government into the Union as a state the concurrence of both the federal and the state government would seem to be required in the transfer of the records in cases of appropriate state jurisdiction from the old to the new government. An act of Congress would be incapable of passing them under the state jurisdiction, as would be an act of the Legislature of the state to take the record out of the custody of the federal government. Both must concur."

See, also, *Hunt v. Palao*, 4 How. (U. S.) 589, 11 L. Ed. 1115; *In re Inerarity, Adm'r, v. Curtis & Griswold, Trustees*, 4 Fla. 175.

Whatever might have been the intent of the enabling act, or the act of Congress amendatory thereto, approved March 4,

1907, c. 2911, 34 Stat. 1286, with reference to the transfer of these records from the federal to the state government, when organized, there is no doubt as to the intent of the act of March 1, 1907, commonly called the "Indian Appropriation Bill" (Act March 1, 1907, c. 2285, 34 Stat. 1026), which, in part, is as follows:

"The Attorney General be, and he is hereby, authorized to make all necessary arrangements for the transfer from the clerks of the United States courts in the Indian Territory and their deputies in their capacities as clerks and as *ex officio* recorders, to the proper state or county officials of the state of Oklahoma when organized, all records, papers, and files now in the custody of said clerks and their deputies, and he is authorized to pay the necessary expense incident thereto out of the excess emoluments earned by said clerks, and their deputies whether as clerks and deputy clerks or as *ex officio* recorders of deeds and other instruments. * * *"

By virtue of this act, and that part of section 13 of the enabling act which provides "* * * that the laws in force in the territory of Oklahoma, so far as applicable," when admitted as aforesaid, "shall extend over and apply to said state until changed by the Legislature thereof," which latter act put in force, *eo instante*, on the admission of this state into the Union, article 4 Wilson's Rev. & Ann. St. Okla. of 1903, which provides for the office of register of deeds for each county in the state, and, after providing for his term of office, qualification, and bond (section 1274), provides: "That the register of deeds shall have the care and custody of all books, records, deeds, maps, papers and fixtures deposited and kept in his office, * * *"—we are of the opinion that the right to the possession of the records in controversy in this case passed immediately, on the admission of these territories into the Union, from the federal to the state government, and thus to relator, on his qualifying and giving bond as required by law. As to concurrent action on the part of the state intended to accept and pass these records under the jurisdiction of the

state, we think that sections 8 and 9 of the schedule of the Constitution of this state are ample for that purpose.

Having determined that relator has shown *prima facie* title to the office of register of deeds of Muskogee county, and that he has qualified and given bond as such, as required by law, and that he is entitled to possession of the records in controversy, let us next inquire whether mandamus will lie to compel this respondent to turn them over to him. Before doing so, however, ual. Relator alleges "that the records belonging to his office as closely; in order to determine in what capacity respondent holds and controls these records—whether as a court or as an individual. Relator alleges "that the records belonging to his office as register of deeds of said county are in the control and custody John H. King, judge of the Third judicial district; * * * that said court refuses to recognize your petitioner as said register of deeds," and refuses to turn them over to him as such. Respondent, answering, alleges "that he has no records in his possession which the plaintiff is entitled to possession of, whether he be the legally elected register of deeds or not; * * * that there is no law in the state of Oklahoma, either in the enabling act or the Constitution, requiring the district court as successor of the United States Court in Indian Territory to turn over to the register of deeds for any county the books, papers, and records received by the court from the clerk of the United States court, or deputy clerk of the United States court, as *ex officio* recorder, for the respective recording districts of the Indian Territory." In short, the facts affirmed on one side are that respondent holds and controls as a court, the records to which relator is entitled. To this respondent answers, in effect, that he does hold and control them as a court; that he, as such, rightfully received them from the clerk or deputy clerk of the United States court at Muskogee, as *ex officio* recorder; and that there is no law by which relator can compel respondent to turn them over to him.

The one thing agreed upon between these parties is that re-

spondent is in control of the records in controversy as a court. Let us see if this is true in point of law. We take judicial notice of the fact that this state was admitted into the Union on November 16, 1907; that at that time the United States courts in Indian Territory ceased to exist (*Inerarity v. Curtis*, 4 Fla. 175), and the office of clerk or deputy clerk as *ex officio* recorder of the United States Court in Indian Territory at Muskogee became *functus officio;* and that the district court for the Third judicial district of the state of Oklahoma was organized and held its first session at Muskogee on November 21, 1907, with respondent presiding as judge. Up to that time, if indeed it could ever be done, it was a legal impossibility for these records to be received by the district court at Muskogee and passed, under its jurisdiction, from the clerk or deputy clerk as *ex officio* recorder of the United States Court in Indian Territory, not only for the reason, as stated, that he as such was *functus officio* and disqualified to act as such, but for the further reason that the act of March 1, 1907, *supra,* had, in effect, directed them to be turned over "to the proper state and county officials of the state of Oklahoma when organized," which proper "state and county official" we have just held was the relator in this case. It might be plausibly contended in the absence of that act that the district·court at Muskogee, as successor of the United States Court in the Indian Territory at Muskogee, came in possession of and extended its jurisdiction over these records by reason of that fact. But this is assuming that the records of the clerk or deputy· clerk of the United States court as *ex officio* recorder were a part of the records of the United States Court in Indian Territory, which we are not willing to concede. But let that be as it may, if such they were prior to that act (March 1, 1907), that act cuts them off as such, and sends them in another direction and divests the district court at Muskogee of the custody, control, or jurisdiction over them. It follows that the custody respondent is alleged and admitted to be exercising over these records is

the unauthorized custody and control of an individual and not of a court, and certainly not of the district court of the Third judicial district of the state of Oklahoma.

The question, then, to be determined is, can the aid of this writ be invoked by relator holding *prima facie* title to the office of register of deeds, and, as such, entitled to the records pertaining to said office, against a private individual claiming no right to the office who is wrongfully in possession of said records and refuses to turn them over to relator on demand? It will be noted that respondent is not in possession of these records as a former incumbent in office, or under color of being elected thereto. If that were the case, the rule is clear that: "Mandamus is a proper remedy to compel the delivery by a former incumbent of a public office of the books, papers, records, seals, money, and other paraphernalia thereof to the person having a clear *prima facie* title to the office and its belongings. The writ has been used to compel the surrender of public buildings and the delivery over of prisoners by a sheriff. In this class of cases mandamus is granted upon the theory that it is the official duty of every officer to surrender possession of the office and its belongings to his lawfully chosen and qualified successor." 19 Am. & Eng. Enc. of Law (2d Ed.) p. 776, citing cases from a number of states in the Union, also from England and Canada; High on Ex. Legal Rem. §§ 73-76; Merrill on Mandamus, §§ 142, 152, 154. But the case under consideration does not come within that rule, but falls within a very well-defined exception thereto, for further on (page 776 19 Amer. & Eng. Enc. of Law, cited *supra*) we read: "Such a duty does not rest upon a mere private individual who happens to be in possession of official books, etc., and it has accordingly been held that mandamus will not lie in such a case to compel their delivery to the officer entitled thereto." See, also, Merrill on Mandamus (1892) §§ 23, 24.

*State of Missouri ex rel. Cooper County, Respondent, v. Wilson W. Trent, Appellant,* 58 Mo. 571, was an appeal to the Su-

preme Court of the state from Cooper county circuit court in
which that court issued a writ of mandamus to compel a private
person, not acting in any official capacity, to deliver to the county
clerk a book of surveys and plats of county roads, made under
order of the court, and paid for by the county, but which re-
spondent had refused to surrender on demand. The judgment
of the lower court was reversed, and in passing on this point the
court said:

"An examination of the authorities show that, although the
granting of the writ referred to is of common occurrence, where
there is no other specific legal remedy, in case an ex-officer,
whether of a public or private corporation, company, church, or
society, or the executor or widow of such officer, refuses, upon
demand made, to deliver to his successor in office the insignia,
books, papers, etc., pertaining to such office (*Town Clerk in Not-
tingham's Case,* Sid. 31; Anon., 1 Barn. 402; *Rex v. Wildman,*
2 Stra. 879; *Kings v. Ingram,* 1 W. Bl. 50; *Rex v. Chapman,* 1
Wils. ——; *Waller v. Belding,* 24 Vt. 658; *People v. Kilduff,* 15
Ill. 492, 60 Am. Dec. 769; *People v. Head,* 25 Ill. 325; *Burr
v. Norton,* 25 Conn. 103), yet the most thorough search has sign-
ally failed to discover a single instance where a private person, as
in the case at bar, has ever been held answerable in such a method
of procedure for books of public nature which were detained by
him."

*People ex rel. Lyman Austin et al. v. Orin S. Curtis, Regis-
ter of Deeds of Kalkaska County,* 41 Mich. 723, 49 N. W. 923,
was where "a conveyance, executed by a married woman, was left
with respondent, who was register of deeds, but who did not re-
ceive it in that capacity, in escrow, upon an alleged understand-
ing that upon the performance of certain conditions the con-
veyance should become completely operative, and he should re-
cord it. That grantor before it had been recorded notified Curtis
not to record it, and he accordingly withheld it from record and
made no further delivery of it. A mandamus is now asked to
compel him to put it on record." The court, in rendering its
opinion, said: "The return shows, and the case made by re-

lator is to the same effect, that the respondent did not receive the papers officially, but as a private person, and to hold it in escrow. * * * He never had possession of the document in his official capacity, and has no official duty to perform concerning it." And the writ was refused.

*State of Georgia ex rel. Henry Hodges v. A. P. Powers, Judge of the Superior Court of Macon Circuit,* 14 Ga. 388, was an application before the Supreme Court for a writ of mandamus. "The application of Henry Hodges in this case shows that he was the defendant in a cause tried in Dooley superior court; that to the decision of the court in that case he had filed a bill of exceptions, which was duly signed and certified by Hon. A. P. Powers, the presiding judge; * * * that after filing the bill of exceptions he was informed and believed that Judge Powers had applied to the clerk and obtained the bill of exceptions and materially changed the same by taking out thereof two of the sheets and substituting three others in lieu therof," and prayed for a mandmus *nisi* to require Judge Powers to show cause why the original leaves should not be restored to the bill of exceptions. In its opinion the court on this point said:

"This application for a mandamus must be refused. In *Heard v. Heard,* 8 Ga. 380, this court held that the circuit judge had no right to interfere with the bill of exceptions after it had been signed and certified by him and filed with the clerk; that his duty is then performed, and his control over the bill of exceptions is at an end. Adhering to the opinion there expressed, and we see no cause to change it, the alteration made in the bill of exceptions in this case, after the same had been filed with the clerk, together with the original notice, writ of error, and citation, as required by law, must be deemed to have been done by the judge individually, and not in his official character. He had no more authority to make it than any other person. * * * It is scarcely necessary to remark that mandamus does not lie against a private citizen."

See, also, 19 Am. & Eng. Enc. of Law (2d Ed.) p. 744, and note, citing authorities.

In other words, where the writ is sought to be invoked, the proper inquiry is, does the duty sought to be enforced clearly result from an office, trust, or station? If so, the writ should run; otherwise not. 26 Cyc. pp. 163, 164. This is the common law, and is embodied in Wilson's Rev. & Ann. St. Okla. 1903, § (4884) 686, which is as follows: ·

"The writ of mandamus may be issued by the Supreme Court or the district court, or any justice or judge thereof, during term or at chambers, to any inferior tribunal, corporation, board or person, to compel the performance of any act which the law specially enjoins as a duty, resulting from an office, trust or station. * *"

This statute was taken from Kansas, and in *Charles L. Hussey v. Oliver P. Hamilton*, 5 Kan. 462, on application for the writ, the application set forth substantially:

"That at the general election held November, 1868, Hamilton received a majority of the votes cast for probate judge of the county of Saline. That the vote then cast was afterwards, at the proper time, duly canvassed, and Hamilton declared duly elected probate. judge for two years from January, 1869. A certificate of his election was properly issued to him by the county clerk. Hamilton then gave a bond as required by law, which bond was approved by the proper officer. Hamilton thereupon took the oath of office prescribed by law, and entered upon the discharge of its duties. Hussey was Hamilton's immediate predecessor in office, and as soon as Hamilton gave bond and took the oath Hussey turned over to him the county seal, and a part, if not the whole, of the books,, records, papers, and furniture belonging to the office. Hamilton took possession of the office February 3, 1869, and continued to discharge the duties of the same, and remained in possession of the books, papers, and seal thereof, until February 12, 1869. On that day Hussey clandestinely entered the office of Hamilton, and surreptitiously removed a part or the whole of the books, records, papers, and furniture pertaining to said office, and also the seal thereof to his own house, or some other place. The pretense therefor was that Hamilton's bond was not legal. On the 20th of February, 1869, Hamilton demanded the seal, books, records, papers, and furniture belonging to said office of Hussey, who refused to deliver them up. Thereupon this proceeding was in-

stituted to recover the possession of said records, etc. Upon the filing of the affidavit and motion by Hamilton, Hussey came in and by his counsel waived the usual preliminary proceeding to obtain the peremptory writ, and made motions to dismiss the proceeding, which motions were overruled by the court. Hussey then filed an answer denying generally the matters set forth in the petition or affidavit, and setting forth other grounds of defense. In order to expedite matters it was then admitted by Hussey that all the matter set forth in the affidavit and petition was true, except as to the sufficeincy of the bond, and Hamilton admitted that the bond was not signed by him until more than 30 days after the second Monday in January, 1869. Upon this state of facts * * * a peremptory writ of mandamus was allowed and duly issued, and Hamilton placed in possession of the seal, records, and other property pertaining to his office. From decision Hussey brings that petition in error."

In its opinion the court said:

"The court below granted a peremptory writ of mandamus commanding the plaintiff in error to deliver up to the defendant in error the books, papers, records, seal, and insignia of office pertaining to the office of probate judge of said county of Saline. Of the several errors alleged we shall notice but one, as that disposes of the whole case. The case was tried on the affidavit and petition of the relator, to which the respondent answered as to an alternative writ, and this case was tried as though such writ had issued. The petition which was sworn to and formed the affidavit in the case did not state facts that would authorize the award of the peremptory writ of mandamus. If it be conceded that the relator, Hamilton, was duly elected and qualified, and his bond good and sufficient, and duly and properly approved, and his right to the office and its insignia perfect and complete, and his possession and enjoyment thereof as absolutely right and perfect in law as in any conceivable case, and the taking possession by Hussey of the books, papers, seal, etc., belonging to the office, as wrongful as is alleged in the affidavit, still the writ ought to have been refused. The affidavit nowhere alleges in terms, or by any fair or reasonable implication, that Hussey, the respondent, took possession of the books and other property of the office under any pretense of a color of right to such property or the possession thereof, or to the office itself, or that he was in any way exercising the duties of the office,

Vol. 20—5

or pretended that he had any right to do so. * * * There is no allegation that he pretended any right to the office, or exercised any functions pertaining to it. He had been probate judge, but had surrendered the same and delivered over the property to the relator 10 days before he took the property into possession, as above mentioned. * * * A writ of mandamus may only issue to an inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station, and may not issue in such cases where there is a plain and adequate remedy at law. The affidavit in this case does not profess to show that Hussey held or pretended to hold any office, trust, or station from which any duty resulted. He is nowhere represented as any other than a private person, with no more special duty than pertains to any and every inhabitant. For this insufficiency of the affidavit the writ ought to have been refused. * * * Did the pleadings or evidence anywhere show that the respondent was acting as probate judge, or that he was pretending to hold the records, books, and papers, etc., by any color or pretense of right as such officer, then the cases referred to would be applicable, and entitled to careful consideration. * * * The judgment of the district court is reversed, with directions to refuse the writ of mandamus."

We are therefore of the opinion that relator, as register of deeds of Muskogee county, not being an officer of the court and entitled to recognition as such by respondent as judge of the district court for the Third judicial district of the state of Oklahoma, does not come within the rule laid down in *Matney v. King, Judge, etc.*, and, as the turning over and delivery of the possession of the records in controversy to relator is not a duty such as the law specially enjoins upon respondent, as an individual, resulting from an office, trust, or station, the writ of mandamus should be refused.

Kane and Dunn, JJ., concur; Williams, C. J., and Hayes, J., concur as to the result.